UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LAUREN NELSEN, ET AL.                                    CIVIL ACTION

VERSUS                                                         NO. 23-2179

GARRISON PROPERTY AND                              SECTION "R" (1)
CASUALTY INSURANCE COMPANY

## ORDER AND REASONS

Before the Court is plaintiffs' motion to remand.[1]  Defendant opposes

the motion.[2]  For the following reasons, the Court denies the motion.

## I.    BACKGROUND

This case arises out of an automobile accident on July 2, 2021,

involving vehicles operated by plaintiff David Wawrose Jr. and another

motorist, Eddie Cole.[3]  Plaintiff Lauren Nelsen was a passenger in Wawrose's

vehicle.[4]  At the time of the accident, Wawrose had an insurance policy with

defendant Garrison Property and Casualty Insurance Company, which

included    uninsured/underinsured    motorist    bodily    injury    ("UMBI")

---

[1]      R. Doc. 6.
[2]      R. Doc. 9.
[3]      R. Doc. 1-2 at 1.
[4]      *Id.*

coverage.[5]  According to plaintiffs, Cole was uninsured or underinsured, thereby triggering Wawrose's UMBI coverage with defendant.[6]

Plaintiffs filed this action in Louisiana state court on March 28, 2023, seeking damages for the full extent of the coverage afforded under the insurance policy.[7]  Defendant contends that it made several unconditional tenders to plaintiffs in the months preceding the lawsuit, totaling $145,000 for Nelsen and $98,000 for Wawrose.[8]

Four days before initiating the lawsuit, Nelsen underwent a VIA Disc procedure.  According to defendant, the only point of contention at the time plaintiffs brought this action was whether it would cover the cost of this procedure.[9]  On April 24, 2023, Nelsen submitted a claim for $46,650, including $41,650 for the VIA Disc procedure itself and $5,000 in related professional fees.[10]

Defense counsel deposed plaintiffs on May 24, 2023, during which Nelsen testified that she no longer experienced relief from her VIA Disc procedure and continues to experience pain in her back and neck.[11]

---

[5]    *Id.* at 2.
[6]    *Id.*
[7]    *Id.*
[8]    R. Doc. 1-3.
[9]    R Doc. 1.
[10]   R. Doc. 6-4 at 1-2.
[11]   R. Doc. 1-8.

Defendant received the deposition transcripts on June 14, 2023.[12]  According to defendant, it was not until the receipt of these transcripts that it understood that Nelsen intends to indefinitely seek expensive interventional pain treatment for her injuries.[13]  Thereafter, on June 23, 2023, defendant removed the action on the basis of diversity jurisdiction.[14]  In its notice of removal, defendant asserts complete diversity of citizenship between the parties, as plaintiffs are both domiciled in Louisiana, and defendant is a corporation, incorporated in and having its principal place of business in Texas.[15]  Defendant further contends that the cost of Nelsen's VIA Disc procedure, along with future medical expenses and claims for general damages, will likely to result in an award exceeding the $75,000 amount-in-controversy threshold for diversity jurisdiction.[16]

Plaintiffs move to remand the case.[17]  Plaintiffs do not contest diversity of citizenship or the amount in controversy, but they assert that defendant failed to timely remove the action.[18]  According to plaintiffs, defendant had thirty days to remove from the date it was served with their original petition

---

[12]   R. Doc. 1 ¶ 5.
[13]   *Id.*
[14]   *Id.* ¶ 6.
[15]   *Id.* ¶¶ 8-10.
[16]   *Id.* ¶¶ 14, 16-18.
[17]   R. Doc. 6.
[18]   R. Doc. 6-8.

for damages or, at the latest, April 24, 2023, when it received Nelsen's claim for the VIA Disc procedure.[19]   Defendant contends that it was Nelsen's deposition or its receipt of the deposition transcript that triggered the thirty-day removal clock and, thus, its removal was timely.[20]

The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action.   *See* 28 U.S.C. § 1441(a).   The removing party bears the burden of showing that federal jurisdiction exists.   *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).   For diversity jurisdiction to exist, the amount in controversy must exceed $75,000, and there must be complete diversity between plaintiffs and defendants.   *See* 28 U.S.C. § 1332(a); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).   In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed.   *See, e.g.*, *Manguno v. Prudential Prop.*

---

[19]     *Id.*
[20]     R. Doc. 9.

& *Cas. Ins.*, 276 F.3d 720, 723 (5th Cir. 2002); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) ("The intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts."). Though the Court must remand the case to state court if at any time before the final judgment it appears that it lacks subject matter jurisdiction, the Court's jurisdiction is fixed as of the time of removal. 28 U.S.C. § 1447(c); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996).

To timely remove a case, a defendant must file a notice of removal within thirty days of its receipt, through service or otherwise, of the initial pleadings. 28 U.S.C. § 1446(b). If the case is not initially removable from the pleading, the defendant may file a notice of removal within thirty days of its receipt, "through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Put another way, a defendant may remove to federal court thirty days after the "receipt" of an "other paper" that indicates, for the first time, that the matter is removable. *See Chapman v. Powermatic, Inc.*, 969 F.2d 160, 161 (5th Cir. 1992) ("[I]f the case stated in the initial pleading is not removable, then notice of removal must be filed within thirty days from the receipt of an

amended pleading, motion, order, or other paper from which the defendant can ascertain that the case is removable.").

## III.  DISCUSSION

Defendant argues that it timely removed the action within thirty days of receiving "other paper" in the form of the deposition transcripts on June 14, 2023.  Plaintiffs contend that an amount in controversy above $75,000 was clear at the time they filed the state court action, or, at the latest, by April 24, 2023, when defendant received Nelsen's itemized expenses and medical report for the VIA Disc procedure.

### A.   Initial Pleadings

Under 28 U.S.C. § 1446(b), if the initial pleading in the state court case provides notice that the matter is removable to federal court, then the thirty-day removal clock begins to run at the time the defendant receives a copy of that pleading "through service or otherwise."  28 U.S.C. § 1446(b)(1).  In *Chapman v. Powermatic, Inc.*, the Fifth Circuit set the "bright line rule" that the thirty-day removal clock begins to run only if the initial pleading "*affirmatively reveals on its face* that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court."  969 F.2d

at 163 (emphasis added). In so doing, the *Chapman* court rejected a standard that imposes upon a defendant a duty of "due diligence in determining the amount in controversy when the initial pleading does not reveal such an amount." *Id.* at 162-63. Thus, courts are not to consider a defendant's actual or constructive knowledge when determining whether the complaint affirmatively reveals the amount in controversy. *Id.* at 163; *see also S.W. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996) ("[D]efendant's subjective knowledge cannot convert a case into a removable action." (citing *Chapman*, 969 F.2d at 163)). The purpose of the standard announced in *Chapman* was to promote certainty and judicial efficiency by preventing courts from needlessly expending "their resources trying to determine what the defendant knew at the time it received the initial pleading and what the defendant would have known had it exercised due diligence." *Chapman*, 969 F.2d at 163; *see also Mumfrey v. CVS Pharmacy Inc.*, 719 F.3d 392, 399 (5th Cir. 2013) (noting that *Chapman* "had several practical ramifications," including that it "sought to promote efficiency by preventing courts from expending copious time determining what a defendant should have known or have been able to ascertain at the time of the initial pleading" (citing *Chapman*, 969 F.2d at 163)).

Here, as directed by Louisiana law, plaintiffs did not plead a specific amount of monetary damages in their petition.  *See* La. Code Civ. Proc. Ann. art. 893(A)(1) ("No specific monetary amount of damages shall be included in the allegations or prayer for relief of any original, amended, or incidental demand.").  In this event, the Fifth Circuit has held that, if a plaintiff wants the thirty-day period to run from the defendant's receipt of the initial pleading, the pleading must include "a specific allegation that damages are in excess of the federal jurisdictional amount."  *Chapman*, 969 F.2d at 163; *Mumfrey*, 719 F.3d at 399-400 ("Such a statement would provide notice to defendants that the removal clock had been triggered, but would not run afoul of state laws that prohibit pleading unliquidated damage amounts.").  But here plaintiffs did not include such an allegation in their petition.  And nothing else in plaintiffs' petition affirmatively reveals on its face that they are seeking damages in excess of $75,000.

The petition alleges that plaintiffs sustained damages for past, present, and future pain, suffering, disability, and mental anguish; past, present, and future loss of enjoyment of life; and past, present, and future medical expenses.[21]  It is not readily apparent from this generalized list of damages that the amount in controversy exceeds $75,000.  *See Ramsey v. Pepsi Cola*

---

[21]      R. Doc. 1-2.

*Bottling Co.*, No. 05-284, 2005 WL 8157570, at *2 (M.D. La. July 20, 2005) ("The court agrees with defendant that it is not 'facially apparent' from the original petition's vague and generalized references to past, present, and future damages . . . that plaintiffs' claims exceed the jurisdictional amount."); *Carmardelli v. Wal-Mart Stores, Inc.*, 545 F. Supp. 2d 595, 599 (W.D. Tex. 2008) (holding that original petition did not trigger thirty-day filing period when it merely alleged unspecific injuries and anxiety, pain, illness, past and future medical expenses and mental anguish, and future pain and suffering); *Saxon v. Thomas*, No. 06-2339, 2007 WL 1115239, *2 (W.D. La. Apr. 12, 2007) (holding that damages for medical expenses, pain and suffering, and mental anguish "are often prayed for in cases that have far less than $75,000 in controversy, so their generic listing adds almost nothing toward satisfying the removing party's burden").

Plaintiffs could have included in their petition "a specific allegation that the damages [they sought were] in excess of the federal jurisdictional amount." *Chapman*, 969 F.2d at 163. Because they failed to do so, the removal clock was not triggered by defendant's receipt of the state court petition.

### B.    Other Paper

1. *Nelsen's Medical Records and Expenses as of April 24, 2023*

On April 24, 2023, Nelsen's counsel sent defendant correspondence (the "January 24 document") claiming an additional $46,650 in medical expenses for the VIA Disc procedure that Nelsen had recently undergone.[22] The document attached Nelsen's medical records, which included, among other things: a description of her VIA Disc procedure,[23] records of several injections and a radiofrequency ablation,[24] and chiropractic treatment notes.[25]  According to plaintiffs, these records show significant injuries and ongoing treatments in excess of $75,000.

"To qualify as an 'other paper' [sufficient to trigger removal] the discovery response must be 'unequivocally clear and certain,' so that defendant may ascertain the action's removability."  *See Cole ex rel. Ellis v. Knowledge Learning Corp.*, 416 F. App'x 437, 440 (5th Cir. 2011) (citing *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002)).  The Fifth Circuit has cautioned that the standard applied to other paper "seems to require a greater level of certainty or that the facts supporting removability

---

[22]    R. Doc. 6-4.

[23]    *Id.* at 5-6.

[24]    *Id.* at 36, 45, 119.

[25]    *Id.* at 76-92, 99-106.

be stated unequivocally." *Bosky*, 288 F.3d at 211.  Further, "[o]ther paper describing injuries and other damages that seem likely to exceed the amount in controversy requirement, but which do not show unequivocally that the requirement is met, [is] insufficient to trigger the removal clock." *Darensburg v. NGM Ins. Co.*, No. 14-1391, 2014 WL 4072128, at *3 (E.D. La. Aug. 13, 2014).

Defendant had unconditionally tendered $145,000 to Nelsen before the lawsuit and its receipt of the April 24 document.[26]  Thus, the only unequivocal amount claimed by the April 24 document was the $46,650 associated with the VIA Disc procedure. *See Malone v. Scottsdale Ins. Co*, No. 12-1508, 2012 WL 6632440, at *4 (E.D. La. Dec. 19, 2012) (deducting tender payments from plaintiff's claim for damages to determine the amount in controversy); *Viloria v. Allstate Ins. Co.*, No. 07-5737, 2007 WL 4591228, at *2 (E.D. La. Dec. 28, 2007) (noting that the payments tendered under the insurance policy "would only further reduce the amount in controversy for jurisdictional purposes"); *see also* 16A Steven Plitt, Daniel Maldonado, Joshua D. Rogers, & Jordan R. Plitt, *Couch on Insurance* § 229:51 (3d ed. 2023) ("Since the insurer, by making a tender, admits that the amount thereof is not in controversy, it follows that the amount of the tender is to be

---

[26]    R. Doc. 1-3.

deducted from the plaintiff's claim in determining the amount in controversy."). *Cf. Mayer Elec. Supply Co., Inc. v. Chester Elec., LLC*, No. 21-372, 2021 WL 5998527, at *4 (E.D. La. Dec. 20, 2021) (holding that defendant's tender of *conditional* payments to plaintiff were not sufficient to reduce the amount in controversy).

The "other paper" plaintiffs rely on to trigger the thirty-day removal clock does not unequivocally show that they intended to recover more than $75,000 in damages. The sole amount in controversy referred to in the April 24 document is the cost of the VIA Disc procedure. It does not mention the need for or cost of any specific future medical treatments. The document does not clearly demonstrate that the nature of plaintiff's injuries will result in damages exceeding $75,000. *See, e.g.*, *Chandler v. Ruston La. Hosp. Co., LLC*, 3:14CV121, 2014 WL 1096365, at * 5 (W.D. La. Mar. 19, 2014) ("[I]f a defendant has to analyze and dissect medical treatment records to divine whether the nature and cause of a plaintiff's injuries satisfy the amount in controversy requirement, then those papers do not suffice to trigger the 30 day time period."). Thus, the only "certain" amount in controversy as of April 24, 2023, was $46,650, which is below the jurisdictional threshold. *See Bradley v. Wal-Mart Stores, Inc.*, No. 21-498, 2021 WL 6751667, at *4 (M.D. La. Nov. 18, 2021), *report and recommendation adopted*, 2022 WL 264541

(M.D. La. Jan. 27, 2022) (holding that plaintiff's medical records were not "other paper" triggering removal when they "only show medical expenses of $3,430," despite evidence of "significant injuries and treatment"); *Russell v. Home State County Mut. Ins. Co.*, No. 03-1911, 2003 WL 22697179, at *3 (E.D. La. Nov. 10, 2003) (concluding that the "medical report supplied by plaintiff is essentially a narrative of plaintiff's physical complaints and recent treatment," and an invoice amount to $630 along with a physician's note about needing more information to determine further treatment was insufficient to clearly establish the jurisdictional amount).

Plaintiffs also argue that a quantum study of Louisiana plaintiffs with similar injuries to Nelsen reveals general damage awards of $200,000 to $560,000 in addition to special damages.[27]  But if defendant needed to conduct independent legal research or consult "quantum books" to ascertain the amount in controversy, the April 24 document is not sufficiently clear and certain to trigger removal.  *See Cole*, 416 F. App'x at 440 ("[T]he necessity of independent research to ascertain the amount in controversy shows the discovery responses were *not* 'unequivocally clear and certain.'"); *see also McKay v. Walmart, Inc.*, No. 22-469, 2022 WL 18216079, at *7 (M.D. La. Dec. 12, 2022) ("If upon receipt of discovery, the defendant must

---

[27]    R. Doc. 6-8 at 9-11.

13

resort to analyzing medical treatment records or conduct independent research by consulting 'quantum books' and case law to determine the amount in controversy, then those papers do not suffice to trigger the thirty-day time period in Section 1446(b)(3).").

Accordingly, the April 24 document does not constitute "other paper" triggering the thirty-day period for removal.


### 2.    *Receipt of Deposition Transcript on June 14, 2023*

The deposition transcript that defendant relies upon as the "other paper" basis for its removal fares no better.  As an initial matter, the Fifth Circuit has made clear that "a transcript of a deposition testimony is other paper for purposes of removal under § 1446(b)(3)." *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 607-08 (5th Cir. 2018) (quoting *S.W.S. Erectors*, 72 F.3d at 494 (internal quotation marks omitted)).  Moreover, it is the defendant's receipt of deposition transcript, not the deposition itself, that starts the removal clock.  *See id.* at 612 (adopting the "bright-line rule" that the "removal clock begins ticking upon receipt of the deposition transcript").  Thus, the relevant question is whether Nelsen's deposition transcript triggered removal.  The Court is not persuaded that the transcript unequivocally shows that the amount in controversy exceeds $75,000.

14

Nelsen indicated during her deposition that she continues to experience pain.[28]  She stated that the VIA Disc procedure gave her "significant relief," but the pain returned after she had surgery to remove her gallbladder in May, which "kind of made that back pain really annoying again."[29]  Nelsen also testified that she occasionally experiences pain in her neck.[30]  She had no appointment or treatment scheduled as of the date of the deposition.[31]  Defendant contends that it became "apparent" from Nelsen's deposition that she is "likely to continue pursuing expensive treatment into the indefinite future."[32]

But the Fifth Circuit has rejected use of the "facially apparent" standard when examining "other paper" for removal purposes.  *Bosky*, 288 F.3d at 211.  The court in *Bosky v. Kroger Texas, LP* explained that the removal clock is triggered only after receipt of "other paper" when it can be "*ascertained*"— meaning "to make certain, exact, or precise, or to find out or learn with certainty"—that the action "is one which is or has become removable."  *Id.* at 210-11 (citations and internal quotation marks omitted).  Although defendant may reasonably anticipate from Nelsen's testimony that her

---

[28]   R. Doc. 1-8 at 53.
[29]   *Id.* at 32-33.
[30]   *Id.* at 38.
[31]   *Id.* at 42, 56.
[32]   R. Doc. 9 at 10-11.

claims "likely" put more than $75,000 in controversy, this is not the level of exactitude that the Fifth Circuit demands under the "unequivocally clear and certain" standard. *See Green v. Geico Gen. Ins. Co.*, No. 15-3968, 2015 WL 5971760, at *5 (E.D. La. Oct. 14, 2015) (holding that deposition testimony was not "other paper" when it did not show damages exceeding $75,000, plaintiff's medical expenses were unknown, and his future surgery was uncertain). *Cf. S.W.S. Erectors*, 72 F.3d at 491-92, 494 (holding that deposition testimony that the "actual damages" exceeded the jurisdictional amount constituted "other paper"); *Henderson v. J.C. Penny Corp.*, No. 12-691, 2013 WL 4039407, at *3-6 (M.D. La. Aug. 7, 2013) (holding that plaintiff's deposition testimony that she "'believe[d]' her damages were in excess of $75,000" and describing her injuries, pain, and treatment in great detail constituted "other paper" triggering removal).

### C.    Removal Before Thirty-Day Clock

Finally, defendant argues that the case should not be remanded even if there was no "other paper" in the state court record establishing the amount in controversy at the time it removed the case. Defendant contends that any prematurity to its removal has been cured and it need not file an amended notice of removal because plaintiffs now admit in their memorandum in

support of remand that diversity exists and that plaintiffs' claims "far exceed the sum of $75,000."[33]

In *Chapman*, the Fifth Circuit noted that a defendant may choose to remove an action even when the thirty-day removal clock under § 1446 is not triggered by the initial pleading. *See* 969 F.2d at 163 n.6; *see also Mumfrey*, 719 F.3d at 400 n.13 (noting that even if defendant "*could* have removed immediately" after its receipt of the state court petition, the petition "did not start the clock such that [defendant] was required to remove if it wanted to"). In such cases, "the federal court may either: (1) look to the petition for removal, (2) make an independent appraisal of the amount of the claim, or suggest that the defendant is free to do so, or (3) remand the action." *Chapman*, 969 F.2d at 163 n.6 (citations omitted). District courts have further recognized that remand is not required when a defendant files a notice of removal before there is "other paper" triggering the removal clock, so long as the amount-in-controversy requirement is satisfied. *See, e.g.*, *Manieri v. CR Eng., Inc.*, No. 19-2805, 2019 WL 2022535, at *3-4 (E.D. La. May 8, 2019) (declining remand despite no "other paper" triggering the thirty-day clock when the amount in controversy requirement was satisfied); *Bradley*, 2021 WL 6751667, at *4 ("When the issue is not timeliness, and the

---

[33] R. Doc. 6-8 at 4.

defendant seeks removal before the thirty-day clock starts, the defendant need only [show] that the jurisdictional amount is satisfied."); *Johnson v. Packaging Corp. of Am.*, No. 18-613, 2019 WL 1271053, at *12-13 (M.D. La. Feb. 27, 2019), *report and recommendation adopted*, 2019 WL 1271009 (M.D. La. Mar. 19, 2019) ("[T]his Court has explained that 'timing issues and the standard to determine when the 30-day removal period has begun' are separate from the question of 'whether the matter *could* have been removed based on the allegations in the pleadings or subsequent discovery' and has denied remand where, although the 30-day period for filing a notice of removal pursuant to 28 U.S.C. § 1446(b)(3) was not triggered, the amount in controversy requirement was satisfied." (footnotes omitted)); *Chandler*, 2014 WL 1096365, at *17 (The "unequivocally clear and certain" standard is applied when a court is determining whether a defendant has timely removed, not whether removal was permissive.  Stated differently, the Section 1446(b)(3) 30-day clock acts as a ceiling or limit on removal, not as a jurisdictional floor.").

Thus, the Court may decline to remand if it nevertheless has jurisdiction over the action.  To establish jurisdiction, a removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.  *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d

880, 882 (5th Cir. 2000).  This requirement is satisfied if "(1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or, alternatively, (2) the defendant sets forth 'summary judgment type evidence' of facts in controversy that support a finding of the requisite amount." *Manguno*, 276 F.3d at 723 (citations omitted).  Here, plaintiffs admit that diversity exists and that their claims exceed $75,000.[34]  And plaintiffs' UMBI coverage limits are clearly in excess of the jurisdictional threshold.[35]  *See Payne v. State Farm Mut. Auto. Ins. Co.*, 266 F.2d 63, 64-65 (5th Cir. 1959) (holding that in an action for recovery under an insurance policy, the amount in controversy is determined by the lesser value of the claim or the value of the policy limit).  This evidence is sufficient to meet defendant's burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.

Accordingly, the Court finds that defendant's removal before the thirty-day time period under § 1446(b) was invoked does not necessitate remand of this action.

---

[34]   *Id.*

[35]   R. Doc. 11-2.  On August 25, 2023, by order of the Court, defendant submitted a copy of the insurance policy at issue.  R. Doc. 11.  The policy's declaration page indicates that it provides $1,000,000 per person and $1,000,000 per accident in UMBI coverage.  R. Doc. 11-2.

## IV.   CONCLUSION

For the foregoing reasons, plaintiffs' motion to remand is DENIED.


New Orleans, Louisiana, this __11th__ day of September, 2023.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

20